WILLIAM H. FELKNER, JAMES DOUGHERTY, JAMES O'BRIEN, JOHN C. FOX and CURTIS ESTES, Appellants, v. JOHN E. DOOLY, Respondent.

No. 1443.   (75 Pac. 854.)

1. Trusts: Accounting: Res Judicata.
The duty of a trustee to account for all funds received by him, including the proceeds of a mortgage sale to him of a part of the trust property, having been determined in a prior action, the decision is *res judicata* in a subsequent action against him by other *cestuis que trust*, in so far as it related to his duty to account to them with respect to the same funds.[1]

2. Same: Limitations: Enforcement.
An express trust never having been fully performed, is still a subsisting and continuing trust, against which limitations do not run.[2]

[1] Hamilton v. Dooly, 15 Utah 280.
[2] Charter Oak v. Gisborne, 5 Utah 319, 15 Pac. 253.

**3. Same.**

A trustee could not continue as such in the management of the trust property, and, whenever he made a sale of any part of it, repudiate his trust as to the proceeds of such sale, and thus compel the *cestuis que trust* to commence an independent action in order to prevent the running of the statute of limitations against the proceeds of each particular sale.

**4. Same: Laches.**

Where the matters involved in an action by a part of the *cestuis que trust* to compel the trustee to account had been constantly before the courts ever since the trust was accepted until shortly before the action was brought, the *cestuis que trust*, in first one capacity, and then another, demanding an accounting, and the trustee as persistently refusing, the trustee's claim of laches will not be allowed to defeat the action, where the position of the parties has not changed, and the trustee has not been prejudiced by the delay, for which he alone is responsible.

(Decided March 9, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. C. W. Morse*, Judge.

Action to declare and enforce a trust upon moneys received on the sale of certain property alleged to be in the hands of respondent in favor of the appellants as creditors of one William A. Norton, deceased. From a judgment in favor of the defendant, the plaintiffs appealed.

REVERSED.

*Messrs. Pierce, Critchlow & Barrette* for appellants.

*Messrs. Dickson, Ellis & Ellis* and *Messrs. Brown & Henderson* for respondent.

### STATEMENT OF FACTS.

The facts in this case, so far as material in the determination of the questions raised by this appeal, are as follows:

On the 27th day of February, 1883, W. A. Norton made, executed, and delivered to defendant, John E. Dooly, two promissory notes, of $10,000 each, and to secure the payment of these notes, on the same day executed and delivered to Dooly a mortgage on an undivided two-thirds interest in the Charles Dickens mine, the Charles Dickens mill site, water ditch, water right, buildings, reduction works, and all appurtenances used in connection with said properties. On the —— day of ——, 1883, the said Norton executed and delivered to W. S. McCornick his promissory note of $10,000, and, to secure the payment thereof, gave McCornick a mortgage on the other undivided one-third interest in the property, mentioned in the mortgage to Dooly, which interest was not included in or covered by the Dooly mortgage. On the 20th day of June, 1884, Norton, by a deed of conveyance, conveyed to Dooly the property mortgaged (the Charles Dickens property), together with certain mining claims, including an undivided one-half interest in a mining claim known as the "Hidden Treasure," in trust, as found by the court, "to convert the said property, real and personal, into money, and out of the proceeds thereof to pay the debts of said Norton, and, if there was a residue, to pay the same to the devisees under the will of the said William A. Norton." Norton made his will at the same time he executed the trust deed. Dooly was named as executor of the will, with the power to take possession of all of Norton's property, and hold the same in trust, and "to turn the same into money, . . . and out of the proceeds . . . to satisfy, pay, and discharge all just debts and liabilities, and the costs . . . of administration, and to distribute and pay over all the residue of the pro-

ceeds to . . . Wilson and Margaret Norton," father and mother of W. A. Norton. At the time the will and trust deed were executed, Norton was stricken with a fatal malady, and was not expected to recover. Dooly accepted the trust, and at once assumed control of his (Norton's) property and business affairs. The property which consisted mainly of mining property and machinery for the reduction of ores, was all situated in the State (then Territory) of Idaho. Norton died July 15, 1884, a little less than a month after the trust deed and will were executed. In the year 1885, proceedings were commenced in Idaho by seventeen lien claimants to foreclose their liens on the Charles Dickens property for wages. Dooly was made a party defendant, and he answered in each case, setting up his claim in the property by virtue of his mortgage. These cases were consolidated, and W. S. McCornick was brought in as a party defendant. The case came on for hearing, and on the 15th day of February, 1886, a decree was entered foreclosing the mechanics' liens and the mortgages held by McCornick and defendant Dooly. By this decree a lien was established in favor of Dooly for $25,610.41, and in favor of McCornick for $22,368.77. Five of the mechanics' liens, which aggregated $6,442.40, were given priority over the Dooly lien. A sale was made pursuant to this decree in July, 1886, to R. C. Chambers, who acted as trustee for Dooly and McCornick. The third interest covered by the lien in favor of McCornick was sold for $24,000, and the two-thirds interest covered by the Dooly lien for $28,000. No redemption was made, and on January 22, 1887, the time for redemption having expired, the sheriff who made the sale issued a deed to Chambers who, at the request of Dooly, transferred the property by deed to John A. Marshall, trustee, and on the same day Dooly received the money for the property, which plaintiffs are now seeking to make him account for. On December 28, 1887, Hamilton and Rohrer, two creditors of William A. Norton, com-

27 Utah 23

menced an action in the Third District court of the Territory of Utah against John E. Dooly, in which they alleged the same trust in their favor that appellants are now alleging in this action. In that case Dooly answered, setting up the facts hereinbefore stated, and averring that he purchased the property at the sheriff's sale as his own, and "that said purchase was so made that the title to the whole claim might be in one person, and that the interest of said Dooly, individually and as trustee, might be severed; . . . that by virtue of such sale and conveyance said defendant became and was the equitable owner of an undivided two-thirds of said mining claim [referring to the Charles Dickens mine], freed from said trust; that thereafter the same was sold and conveyed by said Chambers, under the authority of the defendant [Dooly]; and that said sum received therefor . . . was not received or even held in trust." This case was tried, and resulted in a decree in favor of defendant Dooly. An appeal was taken to this court, and the judgment of the district court was reversed. Hamilton v. Dooly, 15 Utah 280, 49 Pac. 769. For more detailed statement of the facts, reference is hereby made to that case. It was stipulated that the evidence taken in that case, in so far as it might be material and competent, might be used in this. The record in Hamilton v. Dooly was accordingly added to, and incorporated in, the record of this case; hence we have the records of both cases before us.

On January 16, 1900, plaintiffs, who hold by assignment the claims of a large number of the creditors of W. A. Norton, commenced this action to compel defendant, Dooly, to account for all funds that have come into his hands by virtue of his trust, including the proceeds of the sale of the two-thirds interest in the Charles Dickens property, which they allege are not less than $150,000, and without delay pay into court whatever balance shall be found upon such accounting to be in his posses-

sion, and that a receiver be appointed by the court to take possession of and sell the undivided half interest of the Hidden Treasure mine, held by Dooly by virtue of his trust, and all other property and money that may be found in his hands by virtue of said trust. Defendant answered, and denied that he received $150,000 for the two-thirds interest in the Charles Dickens property, but admitted that he received therefor $59,364.03. He also denied that this money was received or held in trust by him, and denied generally ''that he has sufficient funds in his hands, arising from the sale of said property, to pay all or any of the creditors of William A. Norton, deceased, or that he has any funds in his hands, or ever had any funds in his hands, arising from the sale of said property, which were applicable to the payment of the claims of any of said creditors, either in whole or in part.'' As a further defense, defendant alleged that plaintiffs' cause of action is barred by the provisions of sections 2876 and 2883, and by the provisions of subdivision 4 of section 2877, Rev. St. 1898.

As conclusions of law the court found (1) that appellants had been guilty of laches in not sooner seeking to enforce the trust created by the deed from William A. Norton to John E. Dooly, and that their claims are old and stale; (2) that the cause of action set out in the complaint is barred by subdivision 4, section 2877, Rev. St. 1898; (3) that the cause of action set out in said complaint and in the said cross-complaint is barred by the provisions of section 2883, Rev. St. 1898. Judgment was entered dismissing plaintiff's complaint, and from that judgment appellants have appealed to this court.

McCARTY, J., after making the foregoing statement of facts, delivered the opinion of the court.

The first question presented by this appeal is, did the sale of the Charles Dickens mine under the foreclosure proceedings, and the purchase of the property by Dooly, terminate his trust as to the two-thirds of the

property covered by his mortgage lien? Appellants contend that the sale of the property and its conversion into money did not in any respect change the legal relation of Dooly, as trustee of the property, to the beneficiaries notwithstanding the fact that he purchased the property at the foreclosure sale with the intention of freeing it from the trust, and later on disposed of it as his own to an English syndicate. On the other hand, respondent contends that he purchased the Charles Dickens property at the sheriff's sale for himself, and not for the benefit of the *cestuis que trust*, and thereby repudiated his trust as to this particular property, and that thereafter there no longer existed a continuing and subsisting trust as to it, or the money received from the sale thereof to the English syndicate.

The rule is elementary that, when a person accepts a trust, he is bound to perform the duties arising therefrom, and he can not by his own acts discharge himself wholly or in part from its duties, or escape its responsibilities. 1 Perry on Trusts, 268-274; 1 Beach on Trusts & Trustees, 383. The defendant in this case having accepted the trust created by the deed from Norton to him, and entered upon the management of the trust property, he was legally bound to execute and carry out the trust, unless released by consent of the *cestuis que trust* or discharged by the order of a court having jurisdiction to act in the matter. The duties required of respondent as trustee were to sell the trust property, and out of the proceeds, first, pay the costs incurred in the management of the trust estate, including a reasonable compensation to the trustee for his services; second, to pay the creditors of W. A. Norton; and then pay the residue, if any, to the heirs of said Norton. We know of no rule of law or equity that would permit respondent to exclude or divert any of the trust property from the trust, and by a series of transactions with third parties, and in a circuitous manner, acquire a title in himself to the property so diverted, freed from the burdens of the trust; but, on the con-

trary, it is well settled that a trustee can not deal with trust property for his own benefit.   2 Beach on Trusts & Trustees, 520.   1 Perry on Trusts, 195-197; 26 Am. & Eng. Enc. Law, 194, and cases cited in note. If a trustee desires to bid at a sale in order to protect some interest he may have in the property, he must make application to the court, and give the beneficiaries under the trust an opportunity to be heard; and on investigation the court may under such restrictions as it may deem necessary to protect the interests of the *cestui que trust,* permit the trustee, if it appears his application is made in good faith, to bid on and buy in the property.   When a sale of trust property has thus been made to a trustee, and it appears that it has not been conducted with fairness to all parties, but has been so managed as to inure to the benefit of the trustee, to the injury of the beneficiaries, they (the beneficiaries) may appeal to the court; and, upon investigation, if it be found that the sale is tainted with fraud, or that any undue advantage has been taken by the trustee, the court can refuse to confirm the sale, and thereby remedy the wrong. If, however, the trustee, in making the sale acted in good faith, having a proper regard for the welfare of the beneficiaries of the trust, as well as his own interest, he would obtain an indefeasible title to the property purchased.   Scholle v. Scholle, 101 N. Y. 167, 4 N. E. 334. This procedure, however, was not followed by respondent when he purchased the two-thirds interest in the Charles Dickens property covered by his mortgage lien.   He bought this two-thirds for $28,000, which was only 16 2-3 per cent more than the one-third covered by the McCornick lien sold for; both sales being made at the same time to R. C. Chambers, Dooly's agent.   It also appears from the record that some two or three thousand dollars of the trust fund was used in making the purchase.

These questions were before this court in the case of Hamilton v. Dooly, 15 Utah 280, 49 Pac. 769. In that

case the same trust fund was involved, it being the subject-matter of litigation in the suit; and this court held, in an elaborate and carefully prepared opinion, that the purchase of the property by respondent at the sheriff's sale did not divert it from the trust, or in any respect change his (respondent's) relation as trustee of the property, to the *cestuis que trust*. In that opinion, Mr. Justice BARTCH, speaking for the court, said: "When the defendant [Dooly] accepted the trust under the conveyance from Norton, he at once became charged with the duty of managing and disposing of the property in a careful and prudent manner for the benefit of the *cestuis que trust*. The property became a trust fund, and could not be diverted from the objects of the trust. His duty in relation thereto was imperative, and the fiduciary relation which thereafter existed between him and his beneficiaries made it impossible for him to lawfully gain any peculiar advantage or benefit to himself out of the trust estate. Under such a trust the trustee is absolutely prohibited from speculating with the trust funds; and if he does, and loses, the loss is his, and, if he gain, the gain belongs to the *cestuis que trust*. . . . A person in such a situation can not be permitted to act up to the time of the sale, obtain all the information useful to him, and then shake off his character as trustee, and become an unconditional purchaser of the property." And on page 305 this court again declared: "A mortgagee who is also a trustee is bound to fulfill his trust with the same fidelity as if he were not a creditor. Nor could the defendant act as trustee up to the time of the sale, then disrobe himself of his fiduciary character, and, with the information obtained while in the trust relation, gain an advantage to himself. . . . As mortgagee, his rights were in no way impaired by the sale. His situation was just the same after as before. He still had the right to payment out of the property, but he had no right to speculate with the trust fund, and, therefore it was his duty to account to the *cestuis que trust* for the profits of the sale to the

syndicate.'' The decision in that case, so far as it deals with and defines the character and nature of the fund under consideration, and holds that it is respondent's duty to account to the *cestuis que trust* for all funds received by him as trustee, including the proceeds of the sale of the Charles Dickens property, is *res adjudicata.* Therefore, a further discussion of these questions is unnecessary, as we reaffirm the doctrine announced and the conclusions reached in that case. That decision ought to have terminated the litigation over the trust fund, except as to the accounting, for the rights, duties, and liabilities of the respondent respecting his stewardship of the trust fund were, in a general way, clearly defined and pointed out.

The grounds mainly relied upon by respondent to defeat a recovery in this case are the statute of limitations and laches. Respondent insists that when he purchased the two-thirds interest in the Charles Dickens property at the sheriff's sale, as his own, he thereby repudiated his trust to this particular property, and the statute of limitations commenced to run in his favor, and that the action is barred. Appellants contend that this being an express 'trust, and never having been closed and respondent freed from his duties as trustee, the statute of limitations can not be invoked. So far as shown by the record, respondent has never accounted for the trust funds which have come into his possession by virtue of his trust. The trust having never been closed or fully performed, is still a subsisting and continuing trust, against which the statute of limitations does not run. The property mentioned in the trust deed and in the will was taken by respondent under the same trust, and he could not continue as trustee in the management of the property, and, whenever he made a sale of any part of it, repudiate his trust as to the proceeds of such sale, and thus compel the *cestuis que trust* to commence an independent action in order to pevent the running of the statute of limitations against the proceeds of each particular sale. Charter

Oak v. Gisborne, 5 Utah 319, 15 Pac. 253; 2 Lewin on Trusts, 863; 2 Perry on Trusts, 863; Allen's Adm'r v. Wooley's Ex'rs, 2 N. J. Eq. 209; Eastman v. Davis, (Vt.) 35 Atl. 73.

The junior counsel (law firm) for respondent in this case appeared for the plaintiffs in the case of Hamilton v. Dooly, supra, in which, as hereinbefore stated, precisely the same subject-matter and the same facts and questions of law were presented as are now involved in this suit, and, after making a detailed and minute statement of the facts in that case, in their printed argument, declared that "there never was a plainer case in the world where a trustee, taking money of the trust fund, bought in property for the benefit of the trust fund and must be held to account for whatever there may be in it." And again they say: "The statute of limitatations does not bar a trust established, as between a *cestui que trust* and his trustee." It necessarily follows that if Dooly, in that case, was legally bound to account for the proceeds of the Charles Dickens property, he is in the case now under consideration. His relations, duties, and obligations to the plaintiffs in this case are the same as they were to Hamilton and Rohrer—no greater, no less. The plaintiffs rely for a recovery upon the identical facts produced in the case of Hamilton v. Dooly, supra, and upon the same principles of law invoked therein, and upon which the case was determined and disposed of.

The case of Hamilton v. Dooly, supra, was decided July 29, 1897. On March 7, 1899, W. J. Barrette, the administrator with the will annexed of the estate of W. A. Norton, commenced an action in the Third Judicial District court of this State against Dooly, as trustee (respondent herein), to compel him to account for the trust funds received by him. Respondent interposed a demurrer which was sustained by the trial court. An appeal was taken to this court, and the judgment of the lower court was affirmed; this court holding that an administrator could not sue in behalf of the *cestui que*

*trust.* The opinion was announced and handed down December 13, 1899. Barrette v. Dooly, 21 Utah 81, 59 Pac. 718. This action was commenced January 16, 1900. In fact the record shows that the matters involved have been constantly before the courts of Idaho and of this State ever since Dooly accepted the trust; the *cestuis que trust,* in first one capacity, and then another, demanding an accounting, and Dooly as persistently refusing. Under these circumstances, we do not think plaintiffs have shown such laches as will defeat their action, especially in view of the fact that the position, or relations of the parties have not changed, and that respondent has not been prejudiced by the delay, for which he alone is responsible.

After a careful review of the entire record, including the records of the former cases, we are of the opinion, and so hold, that the findings of the trial court, so far as they are inconsistent with the views herein expressed, are erroneous, and not supported by the evidence.

The case is reversed and remanded, with directions to the trial court to set aside the judgment entered, and proceed in accordance with this opinion. Costs of this appeal to be taxed against respondent.

BASKIN, C. J., and BARTCH, J., concur.